IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE,<br><br>*Plaintiff*,<br><br>v.<br><br>XAVIER BECERRA,<br>*In His Official Capacity as Secretary of Health and Human Services*,<br><br>*Defendant*. | Civil Action No. 1:23-cv-01942-TNM |

**PLAINTIFF NATIONAL ASSOCIATION FOR HOME CARE & HOSPICE'S
SUR-REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

CMS's reply brief raises new arguments, cites new cases, and urges the Court to do nothing in response to the agency's statutory violations. The Court should reject these arguments, vacate CMS's final rule, and direct the agency to comply with the law.

1. ***The Review Bars Do Not Apply.*** CMS cannot reasonably dispute that its final rule—which is supposed to make an adjustment under subsection (b)(3)(D) to address the "impact of differences between assumed behavior changes … and actual behavior changes"—is *not* within the express scope of the statute's judicial review bars. Those bars preclude review of six different specified agency actions under precisely identified statutory subsections. They do not cover the adjustment required under subsection (b)(3)(D) or even refer to that subsection.

CMS contends that because subsection (b)(3)(D) contains "internal cross-references" to other determinations and adjustments, the different determinations are "inextricably intertwined" and "the better explanation is that Congress thought that its liberal use of cross-references … would

make plain its intent to protect the agency's program from disruption." ECF 22 at 6. But that is incorrect, and it inverts the required analysis. The behavioral adjustment, which Congress addressed in a separate statutory provision and did not shield from judicial review, requires a separate, standalone adjustment.[1] This case bears no resemblance to the cases cited by CMS, where an agency's estimate and the choice of data used to make the estimate were deemed inextricably intertwined. *See* ECF 22 at 3.

Because of the "strong presumption" favoring judicial review, *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015), the review bars do not apply if they are "reasonably susceptible" to an interpretation that permits the Court to consider NAHC's claims. *Guerrero-Lasparilla v. Barr*, 589 U.S. 221, 229 (2020). That test is readily satisfied here. Congress shielded some, but not all, of CMS's determinations and adjustments from judicial review. The statute is thus reasonably susceptible to a reading that Congress chose not to bar review of the adjustment called for under subsection (b)(3)(D). The behavioral-assumption adjustment does not require technical expertise; instead, Congress expected CMS to comply with its directions and wanted to ensure that home health agencies were treated fairly. Judicial review protects the program that Congress designed from the unnecessary disruption caused by CMS's irresponsible statutory violations.

2. ***More Administrative Process Would Be Futile.*** CMS next asserts that the Court lacks "jurisdiction," but there is no dispute that NAHC has satisfied the statute's jurisdictional presentment requirement. The only question is whether NAHC should be required to exhaust

---

[1] CMS suggests that the determinations are intertwined because, in its view, making the behavioral adjustment requires revisiting its earlier budget-neutrality calculation. That is a variation of the government's argument on the merits concerning what actions are required under subsection (b)(3)(D). Accordingly, because CMS's review-bar objection is merged with the merits, the Court should address NAHC's statutory claims on their merits. *See Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1238 (D.C. Cir. 2020).

further administrative processes, which CMS concedes is a *prudential* requirement that can be excused and waived. ECF 22 at 7 n.1. As NAHC has explained, waiver is appropriate here for three separate reasons: exhaustion would be futile, the issues raised are collateral to any claim for payment, and NAHC's members face irreparable harm. *See* ECF 21 at 24–28.

CMS contends that NAHC should be forced to seek expedited review through an administrative process. But to what end? NAHC's claims raise pure questions of statutory interpretation, and CMS has not identified any factual dispute appropriate for administrative resolution. The agency gives "no reason to believe" that the administrative "machinery might accede" to NAHC's statutory claims. *Tataranowicz v. Sullivan*, 959 F.2d 268, 276 (D.D.C. 1992).

That omission is unsurprising, as there is no dispute or uncertainty over whether the issues presented are purely legal. If there were uncertainty, permitting the agency to address in the first instance whether it considers an issue to raise a pure question of law (or whether facts are in dispute) would not be a "futile" gesture. But those considerations do not apply where, as here, an agency has issued a final rule that violates Congress's express statutory commands, the rule is binding on the agency's administrators, and there are no material disputed facts.

CMS asserts that forcing NAHC's members to go through further administrative proceedings would "provide the Court with a fuller record," clarify questions of venue, and leave the relevant legal issues "'isolated for thorough analysis.'" ECF 22 at 9. All of that is incorrect. The legal issues are already "isolated" for this Court's decision. CMS has filed almost 70 pages of briefing, and nowhere does it identify any unresolved factual issues that could be developed on a "fuller record." And venue is clearly appropriate in this district, where both the defendant agency and NAHC reside. *See* 28 U.S.C. § 1391(b); 42 U.S.C. § 405(g); 42 U.S.C. § 1395ff(b)(2)(C)(iii).

CMS cites new cases—most of them not referenced in its earlier brief—where courts have required litigants to seek expedited judicial review through an administrative process. Those cases are readily distinguished. Many involve a different statutory scheme in which *jurisdiction* to review a party-specific *reimbursement* decision depends first on obtaining a decision from the Provider Review Reimbursement Board. *See* 42 U.S.C. § 1395oo(f)(1); *see also St. Francis Med. Ctr. v. Becerra*, 2023 WL 6294168, at *3 (D.D.C. Sept. 27, 2023) (holding that providers may not bypass the Board until after the Board first makes a jurisdictional determination); *Univ. of Colo. Health v. Azar*, 486 F. Supp. 3d 185, 206 (D.D.C. 2020); *Bayshore Cmty. Hosp. v. Azar*, 325 F. Supp. 3d 18, 23 (D.D.C. 2018). None of those cases address the situation here—where the Court is presented with a *non-jurisdictional* requirement that would be futile to enforce because the petition raises a purely legal challenge to a final rule.

The remaining cases cited by CMS involve situations where, unlike here, a factual dispute exists because the parties "do not appear to agree" on how the agency's final rule applies. *Nat'l Home Infusion Ass'n*, 2021 WL 2439570, at *7 (noting exhaustion is helpful when parties are not in agreement "as to the facts and the applicable law"). In contrast to those cases, courts waive exhaustion when no facts are in dispute, the issues involve pure questions of law, and the agency has exceeded its statutory authority. *See Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 8 (D.D.C. 2019) (waiving exhaustion when challenge "raises pure questions of law that cannot be decided through the administrative process"); *NAHC v. Burwell*, 77 F. Supp. 3d 103, 112 (D.D.C. 2015) (concluding that exhaustion of statutory claim would be futile, including because "no factual disputes would impede judicial resolution of the claim"); *Tataranowicz*, 959 F.2d at 274 (excusing exhaustion requirement when plaintiff raised pure statutory claim).

4

CMS also contends that NAHC's challenge is not collateral because, according to CMS, this lawsuit seeks "to compel the agency to pay NAHC's members" more. ECF 22 at 11. That is incorrect. This lawsuit does not seek to compel payment; it seeks to vacate CMS's final rule. While a decision in NAHC's favor should ultimately lead to CMS providing the payments Congress intended, the issues raised and the relief that NAHC seeks *in this case* "stand[] apart" from whether any particular NAHC member has a right to an additional payment. *Turnbull v. Berryhill*, 490 F. Supp. 3d 132, 141 (D.D.C. 2020).

In a final effort to avoid the merits, CMS suggests that NAHC's members are not facing irreparable harm because they have suffered only a "temporary loss of income" that "ultimately" may "be recovered." ECF 22 at 12. But that back-handed response fails to address the evidence presented in the declarations, which show the devastating consequences of CMS's final rule. *See* ECF 15-2 (Edwards Decl.) ¶¶ 10-13 (explaining how Mary Lanning Healthcare has been forced to sell part of its business and reduce essential services to patients). Contrary to CMS's assertions, NAHC's position does not mean that exhaustion requirements never apply when CMS changes payment rates. It merely means that where, as here, the only issue to be resolved is a pure question of statutory interpretation, there is no reason to wait for a futile administrative process to run its course where parties are suffering immediate, substantial, and irreparable harm.

3.   ***CMS's Merits Arguments Confirm It Has Violated the Statute.***   CMS spends pages of its reply trying to evade the plain statutory text. But even its brief's first page confirms that CMS is violating Congress's commands. The hypothetical that both sides discuss provides a simple analogy of a court seeking to incentivize its clerks to spend less time preparing draft opinions and more time preparing final opinions and memoranda. CMS cannot dispute the math— paying $38 to the clerks is less than paying $50 and would not be budget neutral. CMS's only

response is to assume that the clerks must be "slacking off." ECF 22 at 1. But there is no basis for that assumption, which penalizes the clerks for changing their behaviors as the court intended. The whole point of adjusting payment incentives was to induce a change in behavior—in the hypothetical, for the clerks to produce fewer draft opinions and to devote their resources elsewhere—while ensuring that the overall payments they receive would not change.

The same is true for home health agencies. CMS has no record evidence—or any reasoned basis to assume—that any health agency has "slacked off." The agency says it should pay less because home health agencies are providing fewer therapy services. But that is precisely what Congress wanted to happen when it changed the payment methodology to eliminate payments for therapy services and directed CMS to adjust for changes in behavior. Penalizing home health agencies for doing what Congress intended violates the statute. It is also a clear example of arbitrary and capricious agency action—inducing home health agencies to move away from therapy and then, when they do what they are told, penalizing them with the perverse assumption that if they provided fewer therapy services they must be "slacking off."

Raising another new argument, CMS contends that it is "unworkable" to distinguish between "slacking off" and behavioral changes made in response to a change in payment methodology. ECF 22 at 15. But that just means CMS has not complied with the statute. Congress wanted CMS to measure the difference between assumed and actual behavior changes in response to the change in payment methodology. If behaviors changed for other reasons—because, for instance, home health care agencies "slacked off"—CMS must address those changes separately. *See* ECF 21 at 10–12 (responding in more detail to CMS's meritless suggestion that it would need to spend the same even if only 100 patients were served). CMS cannot duck its statutory

6

obligations by arbitrarily ascribing misconduct to an entire industry and penalizing it for responding to payment incentives as Congress intended.

4. ***Vacatur is Appropriate.*** CMS urges the Court to remand instead of vacating its final rule, arguing that the Court should remand to "allow the agency to offer a better explanation." ECF 22 at 24. But vacatur is the "default remedy," ECF 21 at 28–29 (quoting *Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 99 (D.D.C. 2019)), no explanation can justify CMS's statutory violations, and CMS has never even attempted to offer any justification in its briefs. There is no reason to conclude that CMS could come up with anything new on remand.

CMS contends that requiring it to comply with the statute would cause disruption because the Court is purportedly being asked to set aside specific determinations with respect to specific claims for benefits. That too is incorrect. NAHC is asking the Court to strike down and vacate the agency's final rule. *See* 5 U.S.C. § 706. How the agency decides to correct and remedy the mistakes it has made is not before the Court. In other contexts, CMS has made industry-wide adjustments to compensate for underpayments in past periods. *See, e.g.*, Medicare Program; Hospital Outpatient Prospective Payment System: Remedy for the 340B-Acquired Drug Payment Policy for Calendar Years 2018-2022, 88 Fed. Reg. 77,150 (Nov. 8, 2023). CMS could take a similar approach here. The Court should therefore follow the ordinary course by rejecting CMS's statutory violations and striking down its unlawful final rule.

Date: March 6, 2024

Respectfully submitted,

/s/Mark D. Polston
Mark D. Polston
D.C. Bar No. 431233
Ashley C. Parrish
D.C. Bar No. 464683
Amy R. Upshaw
D.C. Bar No. 888156455
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
mpolston@kslaw.com
aparrish@kslaw.com
aupshaw@kslaw.com

William A. Dombi
D.C. Bar No. 445832
Center for Health Care Law
228 Seventh Street SE
Washington, D.C. 20003
Telephone: (202) 547-5262
Facsimile: (202) 547-3140
wad@nahc.org

*Attorneys for Plaintiff National Association for Home Care & Hospice*